# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 19-3634

ROWAN THOMPSON, an individual

    Plaintiff(s),

v.

THOMAS RAGLAND, individually

    Defendant(s).

## COMPLAINT

Plaintiff, Rowan Thompson ("Plaintiff" or "Ms. Thompson") who appears individually, hereby respectfully files this action against Thomas Ragland ("Mr. Ragland"), through the undersigned counsel of record Kishinevsky & Raykin, Attorneys at Law, and states on information and belief as follows. This action seeks relief including appropriate damages and costs.

### I. JURISDICTION AND VENUE

1. The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Federal question jurisdiction arises under the Constitution and laws of the United States of America, including but not limited to the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

2. Plaintiff Rowan Thompson is a resident of Colorado.

3. On information and belief, the individual defendants are residents of Colorado.

1

4. At all times relevant to this lawsuit, Defendant Ragland was Associate Director for Student Conduct for Metropolitan State University of Denver ("MSU"), a public university in Denver, County, Colorado.

5. The wrongful acts alleged by the plaintiff occurred in whole or in part in Denver County, Colorado.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2).

## II. BACKGROUND FACTS

7. Plaintiff is a student at MSU.

8. In February 2019, Plaintiff had a disagreement with one of her professors at MSU, Dr. Megan Lazorski ("Dr. Lazorski").

9. On two occasions Plaintiff had arrived late to Dr. Lazorski's class.

10. Upon arriving late to class on February 4, 2019, Plaintiff noticed that all of the seats in the first three rows were occupied.

11. Due to an eye condition that makes her sensitive to light, Plaintiff requires a seat in the first three rows of a classroom in order to effectively see the white board.

12. On February 4, 2019, because all seats in the first three rows were taken, Plaintiff sat on the floor in the front row.

13. Dr. Lazorski did not approve of Plaintiff sitting on the floor.

14. Dr. Lazorski interrupted her lecture to instruct Plaintiff to take a seat. When Plaintiff informed Dr. Lazorski that she needed to sit there in order to see the white board due to her eye condition, Dr. Lazorski insisted she move to a seat.

15. Dr. Lazorski had students move back a row to make room for Plaintiff in the front row.

16. On February 11, 2019, Plaintiff arrived late to class and noticed that all the seats in the first three rows were taken. On this date however, a desk had been removed from the front row leaving an empty space between two desks.

17. Plaintiff chose to sit on the floor in the empty space between two desks.

18. Dr. Lazorski again instructed Plaintiff to move to a seat.

19. Plaintiff again informed Dr. Lazorski that she would prefer to sit on the floor in the front of the classroom where she could see the white board.

20. Dr. Lazorski insisted that Plaintiff sit at a desk and informed her that she could sit in a desk or leave the classroom.

21. Plaintiff chose to leave the classroom.

22. Following the two incidents in February, Plaintiff chose to pursue her complaints with Dr. Lazorski through appropriate channels.

23. Because of the disagreement and the unlikelihood of it being resolved, Plaintiff was removed from Dr. Lazorski's class, and through institutional correction, the class was removed from her record and tuition was refunded.

24. Plaintiff wrote a letter detailing her complaints about Dr. Lazorski to various MSU officials including Provost and Vice President for Academic & Student Affairs Dr. Viki Golich, Associate Vice President for Faculty Affairs Dr. Sandra Haynes, and Academic Department Coordinator for the Department of Chemistry Ms. Katie Senga. Dr. Lazorski was also copied on the letter.

25. Plaintiff requested the opportunity to discuss her concerns about Dr. Lazorski with a mediator.

26. Mediation took place on March 18, 2019.

27. During the mediation, Plaintiff was informed that Student Ratings of Instruction ("SRI") and the evaluation process are very important at MSU for the purposes of promotion and tenure.

28. Plaintiff was encouraged to fill out the evaluation and SRI forms to address her concerns about Dr. Lazorski's performance.

29. Plaintiff was informed that these are taken very seriously.

30. On April 25, 2019, Plaintiff received a letter from Defendant Thomas Ragland informing her of disciplinary action being taken against her by MSU

31. The April 25 letter informed Plaintiff that the Dean of Students Office received reports that Plaintiff may have violated provisions of the Student Code of Conduct.

32. The letter informed Plaintiff that these reports stemmed from the disagreement between Plaintiff and Dr. Lazorski.

33. The letter informed Plaintiff that she may have violated the Student Code of Conduct in part due to an email she sent to students of Dr. Lazorski's class.

34. The email referred to in the April 25 letter stemmed from the fact that Plaintiff was no longer enrolled in Dr. Lazorski's class but felt that Dr. Lazorski had treated her unfairly. Plaintiff emailed the students of Dr. Lazorski's class to inform them of the ability to evaluate the course.

35. The email referred to in the April 25 letter stated:

> Hello everyone, I'm Rowan- some of you may know me as the goth girl who sat on the floor in class. For those who don't know, I came late to class a couple of times and sat on the floor. It angered the professor enough that I was asked to leave class on the last occasion. A few weeks later, after a mediation attempt between the dean of chemistry and the professor, I had to drop the class to stop further confrontation- over sitting on the floor.

> I have heard so many of you say how horrible a time you're having in this class, that there are some bits that are ridiculous or downright unreasonable. You shouldn't have to suffer through a class, especially one that is required, and this is not what college is supposed to be like. College is supposed to make us feel excited about our futures and finally learn what we are interested in, not ditch class because we know we won't learn anything. You don't need to keep your complaints and troubles private; this is what the evaluations are for. They're online; the link to fill them out appears when you log into Blackboard, they take only a couple of minutes, are anonymous, and the more detail is said the better. Every issue you've had, every complaint? This is when the faculty and university is listening and wants to hear them. Students, including myself, who have dropped the class won't be able to fill out an evaluation- our voices cannot be heard unless we speak to the deans directly, but I know for a fact that many are afraid to speak face-to-face.
>
> Please, take the few minutes to review this chemistry class and be honest- make the faculty listen to you so that this class can change for the better. If not for yourself, than for those who have had to drop the class, feeling worthless and stupid, or for students who will have to take this class after you.
>
> Hang in there- you're almost done and then you can leave this semester behind you! ? ?
>
> -Rowan

36. The April 25 letter informed Plaintiff that she was required to meet with Defendant Ragland.

37. The April 25 letter included a No Contact order to restrict Plaintiff from having contact with Dr. Lazorski.

38. In addition to the No Contact order, Defendant Ragland purported to further restrict Plaintiff's speech.

39. The April 25 letter included the following directive to Plaintiff:

> Further, due to the persistent communication and disruption your communication is about Dr. Lazorski (sic), you are restricted from discussing Dr. Lazorski with any student in the CHE 1800 course or any of Dr. Lazorski's classes, as this would be a violation of the this No Contact Directive (sic)….

40. Plaintiff's letter to Dr. Lazorski's class instructed the students enrolled in the class to "review this chemistry class and *be honest*" (emphasis added).

41. Even though Plaintiff was encouraged to fill out SRI and evaluation forms for Dr. Lazorski's class, Plaintiff was not able to fill out the forms herself because she had been removed from the class.

42. Defendant Ragland's prior restraint on Plaintiff's speech prevented her from honest speech she wished to make regarding Dr. Lazorski's performance.

43. Plaintiff wanted to bring to bring awareness of Dr. Lazorski's shortcomings as a professor to others and have her complaints properly heard and addressed by MSU, but she was prevented from doing so by Defendant Ragland's directive.

### III. CLAIMS

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983 FOR VIOLATION OF CONSTITUTIONAL RIGHTS – AGAINST DEFENDANT RAGLAND**

44. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

45. 42 U.S.C. § 1983 provides that: "Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…"

46. Plaintiff is a citizen of the United States and Defendants are persons for the purposes of 42 U.S.C. § 1983.

47. At all relevant times Defendant was acting under the color of state law in his capacity as an employee at a public university.

48. As the alleged conduct occurred during school hours, Defendant's acts were conducted within the scope of their employment.

49. As a state actor, MSU is subject to the Constitutional requirements of the First and Fourteenth Amendments to the United States Constitution.

50. Defendant Ragland is not entitled to qualified immunity.

51. The First Amendment provides that "Congress shall make no law…abridging the freedom of speech…" U.S. Const. Amend. I.

52. It is well established law in the Tenth Circuit that students in public education settings "do not 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.'" *Seamons v. Snow*, 84 F.3d 1226, 1237 (10th Cir. 1996)(quoting *Tinker v. Des Moines School Dist.*, 393 U.S. 503, 509 (1969)).

53. In order to restrict a student's speech in situations not involving school sponsored speech, the speech must "'substantially interfere with the work of the school or impinge upon the rights of other students.'" *Id*.

54. A student's right to bring complaints to the appropriate persons in a public-school setting is well established in the Tenth Circuit. *Id*.

55. It is well established law in the Tenth Circuit that a prior restraint on speech "restricts speech in advance on the basis of content and carries a presumption of unconstitutionality." *Taylor v. Roswell Independent School Dist.*, 713 F.3d 25, 42 (10th Cir. 2013).

56. Defendant Ragland's command to Plaintiff not to speak to any of Dr. Lazorski's students about Dr. Lazorski or her class is a prior restraint on Plaintiff's speech.

57. Plaintiff's speech to fellow MSU students to submit "honest" evaluations of Dr. Lazorski and her class does not involve a substantial interference or material disruption to the work of MSU.

58. Plaintiff's speech to fellow MSU students to submit "honest" evaluations of Dr. Lazorski and her class does not impinge on the rights of any other student.

59. As demonstrated by his signature in the letter and the authority granted to him by MSU and the Board, Mr. Ragland is a final policymaker of MSU with respect to the directive to Plaintiff not to speak to other students of Dr. Lazorski about Dr. Lazorski or her class.

60. As a direct and proximate result of Defendants' conduct, Plaintiff was deprived of her Constitutional rights and suffered other damages including severe emotional distress entitling her to compensatory and special damages, in amounts to be determined at trial.

61. Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1983, pre-judgment interest, and costs as allowable by federal law.

62. Plaintiff is also entitled to punitive damages against Defendants pursuant to 42 U.S.C. § 1983 as Defendants acted maliciously, willfully, or with a reckless and wanton disregard for Plaintiff's Constitutional rights.

## IV. DAMAGES

63. The Defendants' unconstitutional conduct alleged hereinabove has caused Plaintiff the following damages:

    a. Emotional upset, stress, and anxiety in an amount to be established at trial;

    b. Out-of-pocket expenses, litigation costs, and attorney fees in amounts to be established at trial.

64. Defendants' violations of the First and Fourteenth Amendments were willful, entitling Plaintiff to an award of punitive damages to the fullest extent permitted by law.

## V.  REQUEST FOR RELIEF

65. Plaintiff request that the Court enter judgment in her favor and against Defendants as follows:

66. Awarding the Plaintiff damages for out-of-pocket expenses in amounts to be established at trial;

67. Awarding Plaintiff general damages for emotional distress in an amount to be established at trial;

68. Punitive damages, pursuant to 42 U.S.C. § 1988, in the maximum amount permitted by law;

69. Awarding Plaintiff statutory and reasonable attorney fees, litigation expenses, and costs incurred in this action;

70. Awarding Plaintiff pre-judgment interest; and

71. Awarding the Plaintiff any additional and further relief that the Court finds equitable, appropriate, or just.

*s/ Igor Raykin*
Igor Raykin, Esq., Atty. Reg. #43081
Kishinevsky & Raykin, Attorneys at Law
2851 S. Parker Rd., Suite 150
Aurora, CO 80014
Phone: 720-767-1846
E-mail: igor@coloradolawteam.com
Attorney for Plaintiff

*s/ Michael Nolt*
Michael Nolt, Esq., Atty. Reg. #50668
Kishinevsky & Raykin, Attorneys at Law

2851 S. Parker Rd., Suite 150
Aurora, CO 80014
Phone: 720-588-9713
E-mail: michael@coloradolawteam.com
Attorney for Plaintiff