IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-03634-PAB-MEH

ROWAN THOMPSON,

    Plaintiff,

v.

THOMAS RAGLAND,

    Defendant.

**ORDER**

This matter is before the Court on defendant's Motion to Dismiss [Docket No. 23]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.  BACKGROUND[1]

Plaintiff is a student at Metropolitan State University of Denver ("MSU"), a public university located in Denver, Colorado. *See* Docket No. 18 at 2, ¶¶ 4, 7. Plaintiff has an eye condition that requires that she sit in the "first three rows of a classroom in order to effectively see the white board." *See id.*, ¶ 11. In February 2019, plaintiff was taking a course taught by Dr. Megan Lazorski. *Id.*, ¶ 8. On February 4, 2019, plaintiff arrived late to Dr. Lazorski's class and discovered that the seats in the first three rows were occupied. *Id.*, ¶ 12. Plaintiff therefore chose to sit on the floor in the front row. *Id.* Dr. Lazorski "instruct[ed] [p]laintiff to take a seat" and, when plaintiff alerted Dr. Lazorski to

---

[1] The Court assumes that the allegations in plaintiff's complaint are true in considering the motion to dismiss. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

her medical condition, Dr. Lazorski asked students to move so that plaintiff could sit at a desk in the front row. *Id.*, ¶¶ 14-15. A similar situation happened on February 11, 2019, where, after arriving late to class, plaintiff was unable to secure a seat in the first three rows of Dr. Lazorski's lecture. *Id.* at 3, ¶ 16. Plaintiff again sat on the floor and, again, Dr. Lazorski asked plaintiff to take a seat. *Id.*, ¶¶ 17-18. Plaintiff told Dr. Lazorski that she would rather sit on the floor than be unable to see the white board. *Id.*, ¶ 19. Dr. Lazorski gave plaintiff the option of taking a seat or leaving the class; plaintiff chose the latter. *Id.*, ¶¶ 20-21.

After these incidents, "[p]laintiff chose to pursue her complaints with Dr. Lazorski through appropriate channels." *Id.*, ¶ 22. "Because of the disagreement and the unlikelihood of it being resolved, [p]laintiff was removed from Dr. Lazorski's class . . . [and] the class was removed from her record and tuition was refunded." *Id.*, ¶ 23. Plaintiff then "wrote a letter detailing her complaints" to a number of MSU officials. *Id.*, ¶ 24. At plaintiff's request, mediation regarding plaintiff's "concerns about Dr. Lazorski" took place on March 18, 2019. *Id.*, ¶¶ 25-26. During that mediation, plaintiff learned that the "Student Ratings of Instruction" and MSU's evaluation process are important for "purposes of promotion and tenure" of faculty. *Id.* at 4, ¶ 28. Plaintiff was "encouraged to fill out the evaluation and SRI forms to address her concerns about Dr. Lazorski's performance." *Id.*, ¶ 28. However, "because she had been removed from the class," plaintiff was not eligible to submit an evaluation. *Id.* at 6, ¶ 41.

On April 25, 2019, defendant, who is the Associate Director for Student Conduct at MSU, sent a letter to plaintiff "informing her of disciplinary action being taken against her by MSU." *Id.* at 2, 4, ¶¶ 4, 30. The letter told plaintiff that the Dean of Students

Office had received "reports that [p]laintiff may have violated provisions of the Student Code of Conduct," and that the reports "stemmed from the disagreement between [p]laintiff and Dr. Lazorski." *Id.*, ¶¶ 31-32. At least "in part," her violation of the Student Code of Conduct was a result of an email plaintiff sent to the other students in Dr. Lazorski's class. *Id.*, ¶ 33. That email stated that plaintiff had attended a mediation with Dr. Lazorski, that she "had to drop the class to stop further confrontation over sitting on the floor," that Dr. Lazorski's students should evaluate the class since plaintiff knows "how horrible a time" many students were having in it, and that such evaluations should "be honest" so "this class can change for the better." *Id.* at 4-5, ¶¶ 35. Defendant's letter required plaintiff to meet with defendant, prevented plaintiff from having contact with Dr. Lazorski, and restricted plaintiff from contacting any of Dr. Lazorski's current students. *Id.*, at 5, ¶¶ 36-39.

Plaintiff filed suit on December 20, 2019. *See* Docket No. 1. In her amended complaint, plaintiff brings one claim against defendant under 42 U.S.C. § 1983 for violation of plaintiff's First Amendment rights for restricting her from communicating with Dr. Lazorski and Dr. Lazorski's students. *See* Docket No. 18 at 6. On April 16, 2020, defendant filed a motion to dismiss arguing (1) that plaintiff has failed to allege that he committed any constitutional violation and (2) if he did, he is entitled to qualified immunity. *See* Docket No. 23.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671

F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). However, a plaintiff still must provide "supporting factual averments" with his allegations. *Cory v. Allstate Insurance*, 584 F.3d 1240, 1244 (10th Cir. 2009) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." (citation omitted)). Otherwise, the Court need not accept conclusory allegations. *Moffet v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements

4

necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

## III.  ANALYSIS

Defendant asserts that he committed no constitutional violation but, even if he did, he is protected by qualified immunity. *See* Docket No. 23. The Court finds that, even if defendant's actions in restricting plaintiff's communications with Dr. Lazorski and her students violated the First Amendment, the right was not clearly established such that plaintiff can defeat qualified immunity.

Qualified immunity "protects public employees from both liability and 'from the burdens of litigation' arising from their exercise of discretion." *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (quoting *Allstate Sweeping, LLC v. Black*, 705 F.3d 1261, 1266 (10th Cir. 2013)). For a claim to survive a qualified immunity defense, a plaintiff must "demonstrate '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Id.* (quoting *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015)). Courts are permitted to address the prongs of the qualified immunity analysis in any order that they wish and, should "think hard" before addressing both prongs of the analysis. *See Hunt v. Bd of Regents of Univ. of N.M.*, 792 F. App'x 595, 600-01 (10th Cir. 2019) (unpublished) (citing *Camreta v. Greene*, 563 U.S. 692, 707 (2011)); *see also Yeasin v. Durham*, 719 F. App'x 844, 850 (10th Cir. 2018) (unpublished) ("We can analyze either prong of the qualified immunity test first and can resolve the case solely on the clearly established prong." (citing *Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129 (10th Cir. 2013)).

5

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Plaintiff can demonstrate that a right is clearly established "by identifying an on-point Supreme Court or published Tenth Circuit decision" establishing the unlawfulness of the defendant's actions. *Cummings*, 913 F.3d at 1239 (quoting *Quinn*, 780 F.3d at 1005). "Although it is not necessary for the facts in the cited authority to correspond exactly to the situation the plaintiff complains of, the 'plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited.'" *Estate of B.I.C. v. Gillen*, 761 F.3d 1099, 1106 (10th Cir. 2014) (quoting *Trotter v. Regents*, 219 F.3d 1179, 1184 (10th Cir. 2000)).

Plaintiff argues, and the Court agrees, that, as a general matter, students maintain some constitutional rights in the school setting and, to restrict a student's speech, the speech must interfere with the work of the school or impinge the rights of its students. *See* Docket No. 27 at 3 (citing *Seamons v. Snow*, 84 F.3d 1226, 1237 (10th Cir. 1996)); *see also Hunt*, 792 F. App'x at 600-06; *Yeasin*, 719 F. App'x at 851-52. But plaintiff has offered no case, Tenth Circuit or otherwise, demonstrating that it is clearly established that a university official may not restrict a student's online speech directed at the conduct of a class as a form of discipline. While "[b]road legal principles in student free-speech cases provide some guidance . . . [,] they cannot suffice as clearly established law." *Yeasin*, 719 F. App'x at 850-51.

The Supreme Court has cautioned that "colleges and universities are not

6

enclaves immune from the sweep of the First Amendment." *Healy v. James*, 408 U.S. 169, 180 (1972). In the secondary-school context, a school can prohibit speech that "would materially and substantially disrupt the work and discipline of the school." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 513 (1969). The online university setting, however, is far from settled or clearly established. For example, in *Yeasin*, a student was given a no-contact order that prevented him from contacting, directly or indirectly, his ex-girlfriend after the university discovered that the plaintiff "may have violated" the school's sexual harassment policy. *See Yeasin*, 719 F. App'x at 845-46. The plaintiff proceeded to make several Twitter posts that indirectly referenced his ex-girlfriend. *Id.* at 846-47. After disciplinary proceedings, during which the plaintiff did not stop posting tweets, the plaintiff was expelled from the school. *See id.* at 847.

The plaintiff brought a challenge under the First Amendment, and the university raised qualified immunity as a defense. In addressing the university's qualified immunity argument, the Tenth Circuit surveyed Supreme Court precedent on free speech in the university context and concluded that, "[a]t the intersection of university speech and social media, First Amendment doctrine is unsettled." *See id.* at 851-52. First, *Yeasin* noted that *Papish v. Board of Curators of the University of Missouri*, 410 U.S. 667, 667-70 (1973), dealt with whether the university could "proscribe [a school newspaper's] form of expression." *See Yeasin*, 719 F. App'x at 851 (citing *Papish*, 410 U.S. at 670 n.6). Second, the Tenth Circuit analyzed *Healy v. James,* which addressed a university's refusal to recognize a student group. *See Yeasin*, 719 F. App'x at 851-52 (citing *Healy*, 408 U.S. at 170-71). And, finally, the court looked to *Widmar v. Vincent*, 454 U.S. 262, 268-69 (1981), which prevented an already registered religious group

7

from utilizing university common space. *See Yeasin*, 719 F. App'x at 852 (citing *Widmar*, 454 U.S. at 277). The Tenth Circuit concluded that none of these cases dealt with online speech, particularly the ability of a university to discipline a student based on online, off-campus speech. As a result, the Tenth Circuit held that Supreme Court precedent surrounding speech in university settings was inapplicable and, therefore, it was not clearly established that the plaintiff could "tweet about A.W. free from university discipline." *See id.* at 852.

The Tenth Circuit came to a similar conclusion in *Hunt*. There, a medical student posted a derogatory, expletive-filled post on his Facebook page. *See Hunt*, 792 F. App'x at 598. The student was placed on a "professionalism enhancement prescription," which required him to go through various ethics and professionalism assignments to maintain his enrollment at the school. *See id.* at 599. He also was informed that the university's professionalism policy extended to his personal social media posts. *See id.* at 598. After bringing a First Amendment claim against the university, the Tenth Circuit again held that extracurricular, online speech by university students is an "emerging area of constitutional law," with no clearly established precedent. *See id.* at 601-606. The court reviewed many of the same cases it analyzed in *Yeasin* and noted that the Tenth Circuit's "student speech cases mainly concern on-campus speech by K-12 students." *Id.* at 604. Given that the Supreme Court "has not taken [] a case" on university online speech, and the inapplicability of the Supreme Court's precedents in the area, the Tenth Circuit found that, although the plaintiff "provided a patchwork of cases connected by broad legal principles," none of them gave "the defendants notice that their response to the Facebook post was

8

unconstitutional." *See id.* at 606. As a result, defendants were entitled to qualified immunity. *Id.*

These cases demonstrate that the law is not clearly established such that defendant would have been on notice that restricting plaintiff's contact with Dr. Lazorski or her students would violate plaintiff's First Amendment Rights. The Supreme Court's precedents do not easily translate to the online university setting, and the Supreme Court has yet to take a case on the issue. *See Hunt*, 792 F. App'x at 604. Moreover, the Tenth Circuit has explicitly held that "decisions from our court and other circuits have not bridged the unmistakable gaps in the case law, including whether [] (1) *Tinker* applies off campus [or] (2) the on-campus/off-campus distinction applies to online speech." *See id.* at 606. The Tenth Circuit's second conclusion regarding the on-campus/off-campus distinction is particularly important here, where it is unclear whether plaintiff's speech, which was done over the internet but sent to university students enrolled in a university class, is on-campus or off-campus speech. Given the Tenth Circuit's statement that this area of law is unsettled, and plaintiff's failure to supply a single on-point decision,[2] the Court finds that defendant is entitled to qualified immunity.

---

[2] Plaintiff argues that both *Seamons* and *Tinker* are on point. *See* Docket No. 27 at 4. As already discussed, the Tenth Circuit has stated that whether *Tinker* even applies to plaintiff's scenario is an open question and, as a result, it cannot defeat defendant's claim of qualified immunity. And *Seamons* is too factually distinct to be on point, even if it supplies "[b]road legal principles." *Yeasin*, 719 F. App'x at 850-51. *Seamons* involved in-person, in-school speech by a high school student. *See* 84 F.3d at 1230-31. Plaintiff's speech involves online speech by a university student, which may or may not be considered on-campus. As a result, *Seamons* failed to place defendant on notice that his conduct would violate the First Amendment.

## IV. CONCLUSION

For these reasons, it is

**ORDERED** that defendant's Motion to Dismiss [Docket No. 23] is **GRANTED**. It is further

**ORDERED** that judgment shall enter for defendant and against plaintiff on all claims. It is further

**ORDERED** that, within 14 days of the entry of judgment, defendant may have his costs by filing a bill of costs with the Clerk of the Court. It is further

**ORDERED** that this case is closed.

DATED March 17, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge